UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GREGORY ROGERS, on behalf of himself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) No. 3:09-cv-1173 ) |
| v. | ) Judge Sharp ) |
| HCA HEALTH SERVICES OF TENNESSEE, INC., d/b/a SUMMIT MEDICAL CENTER | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court in this overtime and unjust enrichment action is Plaintiff Gregory Rogers' Motion for Approval of 29 U.S.C. § 216(b) Notice and Consent Forms and to Order Disclosure of Current and Former Employees (Docket No. 41), which asks the Court to conditionally certify an opt-in class to proceed under the collective action provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b). It also requests approval of Plaintiff's proposed notice (Docket No. 42-1) and consent form (Docket No. 42-2). Defendant Summit Medical Center responds that Plaintiff's motion should be denied because he cannot establish the existence of a policy or plan that violates the FLSA, has failed to show that he is "similarly situated" to any other employees, and presents a claim that is not amenable to collective action treatment because resolving it would require individualized inquiries across a diverse range of Defendant's departments. (Docket No. 69). Plaintiff has filed a reply. (Docket No. 75).

For the following reasons, the Court will conditionally certify a collective action under § 216(b).

1

## ANALYSIS

By its terms, § 216(b) allows a plaintiff to sue on behalf of himself and "similarly situated" persons who have consented in writing to becoming a plaintiff. The FLSA does not define "similarly situated," but "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009). Plaintiffs may also be similarly situated where "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* However, all collective actions under § 216(b) need not be unified by common theories of defendants' statutory violations. *Id.* Requiring that prospective opt-in plaintiffs' causes of action accrued at "about the time and place in the approximate manner" as the named plaintiff's "is a starting point for understanding what 'similarly situated' means," but "can result in a standard that is more demanding than what the statute requires." *Id.*

Courts typically use a "two-phase inquiry" to determine "whether proposed co-plaintiffs are, in fact, similarly situated for the purposes of the statute's requirements." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). In the first "notice" phase at the beginning of discovery, the "plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" *Id.* at 546-47 (citation omitted). To satisfy this "fairly lenient standard," Plaintiff must at most make a "modest factual showing" that he and potential co-plaintiffs are similarly situated with respect to the conduct alleged in the complaint.[1]

---

[1] In the absence of definitive appellate guidance, "[s]ome courts hold that a plaintiff can demonstrate that potential class members are 'similarly situated,' for purpose of receiving notice, based on solely upon allegations in a complaint of class-wide illegal practices." *Sniffen v. Spectrum Indus. Services*, No. 2:06-

2

*See id.* at 547 (internal citations and quotations omitted). "At this stage the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Brasfield v. Source Broadband Services, LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009). It typically results in conditional certification of a representative class. *Comer*, 454 F.3d at 547 (internal citations and quotations omitted). Certification at this phase is a conditional order subject to later revision. *Comer*, 454 F.3d at 546 (noting that at the second phase, the Court has more evidence and uses a stricter standard to evaluate whether co-plaintiffs are indeed similarly situated); *see Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012) ("Plaintiffs generally must produce 'more than just allegations and affidavits' demonstrating similarity in order to achieve final certification.") (citation omitted).

Plaintiff alleges that Summit's former policy of automatically deducting 30-minute meal breaks from non-exempt employees, in conjunction with its alleged practice of systematically understaffing its facility and its alleged failure to train employees, regularly caused employees to perform work during uncompensated meal breaks with Summit's knowledge. (Docket Nos. 35 at 5-7, 42 at 11, & 75 at 2). In support of his complaint, Plaintiff presents a single sworn declaration, his own, in which he alleges, *inter alia*:

- I was regularly required to perform work during unpaid "meal breaks."
- [I]t was extremely common for hourly employees to perform compensable work for Defendant during their uncompensated "meal breaks."
- Summit has never explained to me or other employees what constitutes a compensable meal break under the [FLSA]. We were not trained that a meal eaten while working was compensable work time. Likewise, we were never trained whether interrupted meal breaks were compensable.
- We are required to take meal breaks, yet we are unable to take them do [sic] to workload and staffing.

---

cv-622, 2007 WL 1341772, at *1 (S.D. Ohio Feb. 13, 2007) (citing *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)).

3

- Supervisors were aware of this problem and did not ensure that hourly employees are completely relieved of their work duties during their uncompensated "meal breaks."
- My co-workers and I are routinely were [sic] not completely relieved of our job duties during uncompensated "meal breaks."
- Summit did nothing in practice to prohibit employees from working during their "meal breaks" and routinely permitted employees to perform such work.
- We were often required to respond to pages, as well as requests by patients, co-workers and supervisors, during unpaid "meal breaks."

(Docket No. 42-3 at 1-2). In support of his contention that Summit was routinely staffed at a level that prevented employees from taking meal breaks, he submits a 2010 news article regarding a lawsuit over HCA human resources software that produced, in the article's words, a "'bare-bones' staffing structure." (Docket No. 75-2 at 2-3).

Defendant challenges Rogers' declaration as vague, lacking the level of detail that would indicate trustworthiness, and reliant on hearsay.[2] To take the last objection first, at the conditional certification stage, the Court is not concerned with the admissibility of evidence; rather, it looks for "some factual basis from which [it] can determine if similarly situated potential plaintiffs exist." *Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574, 577 (N.D. Iowa 2005); *see Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 247 (W.D. Mich. 2011) (discussing the reasons admissibility requirements need not apply at conditional certification stage); *but see Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 866 (S.D. Ohio 2005) (hearsay statements cannot be considered for purposes of § 216(b) certification). "To require more at this stage of

---

[2] Were it not filed in Rogers' reply brief, Defendant would also presumably challenge his reliance on a newspaper article to support his characterization of its "secret" employment practice. It is true that a "court ordinarily declines to consider new arguments and evidence offered for the first time in a reply brief." *Armstrong v. Genesh, Inc.*, No. 11-1161-CM, 2011 WL 6151416 at *1 (D. Kan. Dec. 12, 2011). However, because the Court does not resolve factual disputes at the conditional certification stage, and because the issue of "workload/staffing" is raised in Rogers' motion and accompanying declaration (*see*, *e.g.*, Docket No. 42 at 11), the Court finds that Defendant is not prejudiced by the consideration of this evidence.

4

litigation would defeat the purpose of the two-stage analysis." *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006).

As factual showings go, Rogers' is modest indeed. Defendant rightly points out that the declaration lacks helpful factual detail about the fellow employees that he alleges are similarly situated, and it is not accompanied by a corroborating declaration from any other employee.[3] The news article, meanwhile, lends credence to Rogers' allegation about deliberately low staffing levels, but it will take far more and stronger evidence to establish that low staffing levels, automatic meal break deductions, and a lack of training combined to deprive a class of plaintiffs of wages to which they were entitled under the FLSA.

Still, Rogers has made some factual showing that fellow non-exempt employees exist and were subject to the same workplace policies and practices that he alleges violated the law. At this conditional certification stage, that is enough to render them similarly situated. *See Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 760-61 (W.D. Tenn. 2011); *Kimbell v. Dynamic Strategy, Inc.*, No. 3:08-1175, 2009 WL 1651431 at *4-5 (M.D. Tenn. June 12, 2009). At the second, more stringent stage, Rogers will have the burden of establishing definitively that co-plaintiffs are similarly situated. *See Frye*, 495 F. App'x at 672. At that time the Court will weigh plaintiffs' various employment settings, the individual defenses susceptible to each plaintiff, and the fairness and procedural impact of certification. *Id.*

---

[3] Defendant also argues that Rogers' declaration does not state that he or anyone lost any wages as a result of the policies, and thus he does not describe facts that show a violation of the FLSA. (Docket No. 69 at 19). Read in the context of his briefing and the Amended Complaint, it is clear that Rogers has alleged that he was "denied statutory overtime wages." (Docket No. 35 at 10). At a later stage in this litigation, it will be determined if he and any similarly situated plaintiffs can prove these claims. *See White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012).

5

Defendant invites the Court to resolve the merits of Rogers' claims in light of its evidence to the contrary, which is inappropriate at the conditional certification stage.[4] It argues for a "needed showing of commonality with the huge universe of other workers in other departments, with entirely different shifts, work areas, supervisors, assignments, workloads, hours, and schedules, who may or may not have missed their meal break but, who were paid for such breaks when reported." (Docket No. 69 at 4). But such a detailed showing is not needed, or in many cases possible, at this early stage. *See White v. MPW Indus. Services, Inc.*, 236 F.R.D. 363, 373 (E.D. Tenn. 2006) (noting that "once Plaintiffs have met their burden at the notice stage, Defendant cannot overcome Plaintiff's showing by arguing that individual issues may dominate; rather, if after notice to the putative plaintiffs it appears that individual issues do in fact dominate, the Defendant may move the Court to decertify the class"). And even at the second stage of certification, "such a collection of individualized analyses *is* required of the district court." *O'Brien*, 575 F.3d at 584-85 (holding that a district court "improperly applied a Rule 23-type analysis when it reasoned that the plaintiffs were not similarly situated because individualized questions predominated" and that the FLSA's similarly situated standard "is less stringent" than Fed. R. Civ. P. 23(b)'s predominance inquiry); *see also Frye*, 495 F. App'x at 672.

For the foregoing reasons, and weighing the "broad remedial goal of the statute" against the burdens posed by conditional certification, the Court will conditionally certify a collective

---

[4] It also suggests that its legal automatic deduction system cannot form the basis of an FLSA claim. While it is true that "an automatic-deduction policy, without more, does not violate the FLSA," *Frye*, 495 F. App'x at 672, Rogers alleges injury arising from this policy in conjunction with certain other of Defendant's policies and practices. This is an appropriate ground for an FLSA claim, although as *Frye* indicates, individualized proof problems can cause this type of common theory to "reduce[] to a critique of [the] use of an automatic-deduction policy," weighing against final certification. *Id.* at 673.

6

action. The parties will be directed to confer in good faith to determine certification language.[5] *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70, 173 (1989) (confirming that decisions about notification of potential plaintiffs are committed to the Court's discretion).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion will be GRANTED IN PART, and this case will be conditionally certified to proceed as a collective action under 29 U.S.C. § 216(b). Per Defendant's request, the parties will be directed to confer in good faith regarding the class definition and the scope and manner of notice, and to jointly file proposed notice and consent forms with the court within thirty (30) days after the entry of the accompanying Order. At that time, the parties should also update the Court on any alternative dispute resolution discussions undertaken in this case and the similar *McBride* case, No. 3:10-cv-00620, as per the Magistrate Judge's Order (Docket No. 76).

The Court will DEFER ruling on the remaining relief requested in Plaintiff's motion.

To the extent the parties are unable to reach agreement on any of these issues, Defendant should file its objections within thirty (30) days after the entry of the accompanying order.

The trial in this matter set to begin on August 6, 2013, will be continued to be reset upon the approval of notice and consent forms.

An appropriate Order will be entered.

/s/ Kevin H. Sharp

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

---

[5] The Court is inclined to conditionally certify an opt-in class under the six-year statute of limitations governing unjust enrichment actions, *see Miller v. Jackson*, No. 3:10-1078, 2011 WL 2197694 (M.D. Tenn. June 6., 2011) *and O'Brien*, 575 F.3d at 580-81 (holding that supplemental claims may proceed collectively alongside an FLSA action), but discerning that the parties had at one point entered into a tolling agreement, the Court directs them to confer about the dates and language defining the class.

7